**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No.: 1:21-cr-00186-CRC |
| | : | |
| DAVID ALLEN BLAIR | : | |
| | : | |
| Defendant. | : | |

<u>**AMENDED MOTION TO DISMISS INDICTMENT**</u>

David Allen Blair, Defendant, by and through his counsel, Terrell N. Roberts, III, amends his earlier filed motion to dismiss to add an additional argument challenging the constitutionality of 18 U.S.C. §1512(c)(2) on vagueness grounds, *see*, Argument, IV, and make minor improvements.

Pursuant to Fed.R.Crim.P. 12(b)(3)(B)(iii)(iv)(v), the Defendant requests that the Court dismiss the Indictment on the grounds that it fails to state an offense as to Counts One through Three.   In addition, the indictment improperly joins a count, Count Seven, which should be severed.

<u>**Statement of the Case**</u>

On January 6, 2021, officers of the District of Columbia Metropolitan Police Department arrested the defendant David Alan Blair ("Blair) on the West Lawn of the United States Capitol. Blair was held in custody and formally charged the next day in the Superior Court for the District of Columbia with assault on a police officer (DC Code, §405(b)(2001 ed.).

On March 3, 2021, the Government filed an Indictment (hereinafter "the Indictment" against Blair.  <u>ECF</u> No. 8.  The indictment has nine counts:  Count One – Assaulting, Resisting or Impeding Certain Officers Using a Dangerous Weapon, i.e., a flagpole (18 U.S.C. § III(a)(1) & (b); Count Two – Obstructing, Impeding and Interfering with a Law Enforcement Officer Incident

To and During a Civil Disorder (18 U.S.C. § 231(a)(3)); Count Three, Obstruction of an Official Proceeding By An Act of Civil Disorder (18 U.S.C. § 1512(c)(2)); Count Four --Entering and Remaining in a Restricted Building or Grounds with a Deadly and Dangerous Weapon, i.e., a flagpole (18 U.S.C. § 1752(a)(1) and (b)(1)(A)); Count Five – Engaging in Disorderly and Disruptive Conduct in Proximity to a Restricted Building or Grounds with Intent and Engaging in Conduct that Disrupted the Orderly Conduct of Government Business and Official Functions and Use of a Dangerous Weapon (a flagpole) (18 U.S.C. § 1752(a)(2) and (b)(1)(A)); Count Six -- Engaging in an Act of Physical Violence in a Restricted Building and Grounds and Use of a Dangerous Weapon (flagpole) (18 U.S.C. § 1752(a)(4) and (b)(1)(A)); Count Severn – Carrying a Knife on United States Capitol Grounds (40 U.S.C. §5104(e)(1)(A)(1); Count 8 – Engaging in Disorderly Conduct on Capitol Grounds (40 U.S.C. §5104(e)(1)(A)(1); and Count 9 – Engaging in Physical Violence within Capitol Grounds (40 U.S.C. §5104(e)(2)(f).  The Indictment should be dismissed for the reasons below.

## **Standard of Review**

A defendant may raise by pretrial motion any defenses and objections which "the court can determine without a trial on the merits."  F.R.Crim.P. 12(b)(1).  These include "a defect in the indictment," including a "failure to state an offense" and "lack of specificity." Fed. R. Crim. P. 12(b)(3)(B)(iii) & (v).  In considering a Rule 12 motion to dismiss, "the Court is bound to accept the facts stated in the indictment as true."  *United States v. Syring*, 522 F. Supp. 2d. 125, 128 (D.D.C. 2007); *United States v. Sampson*, 371 U.S. 75, 78 (1962).  Additionally, "the Court cannot consider facts beyond the four corners of the indictment."  *United States v. Ring*, 628 F. Supp. 2d 195, 204 (D.D.C. 2009) (*internal quotations omitted*).

## Argument

I.     **Count One Fails to State an Offense In So Far as It Alleges that a Deadly or Dangerous Weapon Was Used to Commit the Assault.**

Count One fails to allege an offense under 18 U.S.C. §111(b).  It alleges:

> On or about January 6, 2021, within the District of Columbia, **DAVID A. BLAIR**, using a deadly or dangerous weapon, that is, a flagpole, did forcibly assault, resist, oppose, impede, intimidate, and interfere with, an officer and employee of the United States, and of any branch of the United States Government (including any member of the uniformed services), and any person assisting such an officer and employee, that is, Officer K.P., an officer from the Metropolitan Police Department, while such officer or employee was engaged in or on account of the performance of official duties.
> (**Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon**, in violation of Title 18, United States Code, Sections 111(a)(I) and (b))

18 US Code §111(b) provides an enhanced penalty of a fine or imprisonment for a maximum period of 20 years if a person uses "a deadly or dangerous weapon" in the commission of an act described in subparagraph (a) of that section.

The "flagpole" described in the indictment was a lacrosse stick.  *See*, Criminal Complaint, Statement of Facts, p. 3.

A deadly or dangerous weapon is defined as an object that is "likely to produce death or great bodily injury by the use made of it."  *United States v. Broadie*, 452 F.3d 875, 881(DC Cir. 2006).  In *United States v. Vinton*, 594 F.2d 14, 23 (DC Cir. 2010), the Court explained that there are "two categories of objects likely to produce such harm:

> those that are 'inherently dangerous,' i.e., where "the design of the object is such that its ordinary use is likely to cause great bodily injury"; and (2) those that ostensibly may be "used as a tool in certain trades or hobbies or may be carried for utilitarian reasons," but where the surrounding circumstances indicate" that 'the purpose of carrying the object … is it's use as a weapon."  (*Quoting Strong v. United States*, 581 A.2d 383, 386 (D.C. 1990).

Blair's lacrosse stick is not a deadly or dangerous weapon under those criteria.  First, the design of a lacrosse stick is not such that its ordinary use is likely to cause great bodily injury.  In the sport

of lacrosse, a player holds the stick, usually with both hands, and uses it to throw a ball or to check (block) or strike another player who has the ball.  The use of a lacrosse stick in the sport of lacrosse is not known by its ordinary use to be likely to cause great bodily injury.  Thus, it is not an object which is inherently dangerous.

Second, there is nothing alleged in the indictment to establish that the use of the lacrosse stick by Blair was likely to produce death or great bodily injury.  According to the discovery in this case, there is no suggestion that the involved officer was injured or that Blair used the stick to strike him in the head or make contact in any other manner likely to produce death or serious bodily injury. [1]   A valid charging document must set out "the elements of the offense intended to be charged and sufficiently apprise the defendant of what he must be prepared to meet."  *United States v. Pickett*, 353 F.3d 62, 67 (D.C. Cir. 2004).  In the light of paucity of evidence that Blair's use of the lacrosse stick was likely to produce death or great bodily injury, the indictment fails in its essential purpose of apprising Blair of what he must be prepared to meet.

For these reasons, Count One should be dismissed in so far as it alleges that Blair used a dangerous or deadly weapon in violation of 18 U.S.C. §111(b).

II.     **Count Two Fails to State an Offense under 18 USC §231, Since a Civil Disorder Was Not Taking Place Inside of the Capitol or Outside on the West Lawn Where Blair Was.**

Counts Two alleges as follows:

> On or about January 6, 2021, within the District of Columbia, **DAVID A. BLAIR**, committed and attempted to commit an act to obstruct, impede, and interfere with a law enforcement officer, that is, Officer K.P., an officer from the Metropolitan Police Department, lawfully engaged in the lawful performance of his official duties *incident to and during the commission of a civil disorder*, and the civil

---

[1] The discovery in this matter indicates that Blair used the stick to shove the officer in the upper torso.  This is how the stick can be used in the sport of lacrosse.  For examples how a player performs a cross-check with the lacrosse stick, see https://www.youtube.com/watch?v=rABKixFLIxw.

disorder obstructed, delayed, and adversely affected the conduct and performance of a federally protected function.

(**Civil Disorder**, in violation of Title 18, United States Code, §231(a)(3)). (*Emphasis added.*)

The indictment alleges that Blair obstructed, impeded, and interfered with Officer K.P., "an officer from the Metropolitan Police Department, lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder."  According to §232 (1) of Title 18, a civil disorder "means any public disturbance involving acts of violence by assemblages of three or more persons, which causes immediate danger of or results in damage or injury to the property of person of any individual." 18 U.S.C. In light of the circumstances going on at the West Lawn at the time of the offense, the indictment's sparse allegations fail to apprise Blair of what he must be prepared to meet to defend against the charge.  *United States v. Pickett*, *supra*.  The Criminal Complaint filed in this case indicated the offenses were committed at 5:47 p.m.  By that time the disturbance inside the Capitol was over and the House and Senate chambers already had been declared secure.[2]  Outside of the Capitol on the West Lawn, where Blair was, there was a moderate number of protestors gathered and milling about.   However, there were no acts of violence being committed, and none are alleged in the indictment.  Thus, Blair is in the dark about how his conduct on the West Lawn interfered with an officer's performance of duties "incident and during a civil disorder," which was long since over.  For these reasons, the indictment lacks specificity and fails to state an offense.

III.     **Count Three Fails to State an Offense Under 18 U.S.C. §1512 Because Congress Never Intended the Term "Official Proceeding" to Apply in Cases Where Congress Was Not Conducting an Investigation Or Exercising Some Form of Adjudicative Power.**

---

[2] U.S. Senate Report of the Committees on Homeland Security and Governmental Affairs and Rules and Administration, p. 88. *See*, https://www.rules.senate.gov/imo/media/doc/Jan%206%20HSGAC%20Rules%20Report.pdf

Count Three should be dismissed because it fails to state an offense.  It alleges as follows:

> On or about January 6, 2021, within the District of Columbia and elsewhere, **DAVID A. BLAIR**, attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, by committing an act of civil disorder, and engaging in disorderly and disruptive conduct.
> (**Obstruction of an Official Proceeding and Aiding and Abetting**, in violation of Title 18, United States Code, Sections 1512(c)(2) and 2 [sic])

18 U.S.C. §1512(c) states:

> Whoever corruptly –
>
>> (1) alters, destroys, mutilates, or conceals a record, document or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or
>>
>> (2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so,
>
> shall be fined under this title or imprisoned not more than 20 years, or both.

The legal issue is whether Congress' certification of the electoral vote count of the Presidential election on January 6th was an "official proceeding" under 18 U.S.C. §1512.  It was not.[3]

To determine what Congress meant by these words, courts "always begin with the text of the statute." United States v. Barnes, 295 F.3d 1354, 1359 (D.C. Cir. 2002).  The meaning of a statute "must, in the first instance, be sought in the language in which the act is framed." *United States v. Hite*, 769 F.3d 1154, 1160 (D.C. Cir. 2014).  It also must include "an examination of the statute's context and history." *Hite*, 769 F.3d at 1160.

The term "official proceeding," is defined in 18 U.S.C. § 1515(a)(1) as:

> (A) a proceeding before a judge or court of the United States, a United States

---

[3]  This has been was raised in a motion to dismiss by several defendants in other January 6th cases pending in this Court.  One such case is United States v. Thomas Edward Caldwell, Case No. 21-CR-28-APM.  Rulings on these motions are pending.

magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Court of Federal Claims, or a Federal grand jury;

(B) *a proceeding before the Congress*;

(C) a proceeding before a Federal Government agency which is authorized by law; or

(D) a proceeding involving the business of insurance whose activities affect interstate commerce before any insurance regulatory official or agency or any agent or examiner appointed by such official or agency to examine the affairs of any person engaged in the business of insurance whose activities affect interstate commerce[.]

It is apparent that the only one of the definitions that could apply here is subsection (a)(1)(B) ("a proceeding before the Congress").

A fair reading of the text of §1512 demonstrates that Congress intended to use a "legal" definition of an "official proceeding." § 1512's title, "[t]ampering with a witness, victim, or an informant," evinces an intent by Congress to address acts which corruptly affect the presentation of evidence in judicial or quasi-judicial hearings before courts, agencies, and Congress. The statute expressly embraces proceedings involving testimony, witnesses, and the production of documents and records. And it makes unlawful witness and evidence tampering, subornation of perjury, withholding documents, and other similar actions. § 1512, therefore, shows that "official proceeding" involves a hearing or other proceeding akin to a court or administrative body which investigates an issue for decision. For example, in *United States v. Ermoian*, 727 F.3d 894, 901 (9th Cir. 2013), the court held an FBI investigation is not an "official proceeding" under § 1512(c)(2). The *Ermoian* Court held:

> Looking more broadly to § 1512 where the term "official proceeding" is repeatedly used, it becomes even more apparent that a criminal investigation is not incorporated in the definition. Section 1512 refers to "prevent[  ] the attendance or testimony of any person in an official proceeding"; "prevent[  ] the production of a record, document, or other object, in an official proceeding"; and "be[ing]

> absent from an official proceeding to which that person has been summoned by legal process." 18 U.S.C. § 1512(a)(1)(A)—(B), (a)(2)(B)(iv).  The use of the terms "attendance", "testimony", "production", and "summon[]" when describing an official proceeding strongly implies that *some formal hearing before a tribunal is contemplated*.

*Ermoian*, 727 F.3d at 901(*emphasis added*).  The Ninth Circuit also observed that §1515(a), which defines "official proceeding" in § 1512, refers to proceedings "before" agencies and courts.  Id. The court held that an FBI investigation was technically not a judicial or quasi-judicial like "proceeding," which is clearly how the term is used in § 1512.  See also, *United States v. Ramos*, 537 F.3d 439, 462 (5th Cir. 2008)( holding that §1512 was intended as "legislation against mayhem, murder and  intimidation in criminal proceedings and for protection for witnesses and victims from such conduct). *See also, United States v. Binette*, 828 F. Supp. 2d 402, 403-404 (D. Mass. 2011) ("preliminary" SEC investigation was not an "official proceeding" under § 1512, absent a process for witness attendance, sworn testimony, and invocation of subpoena powers").

The D.C. Circuit has held that "proceeding" under §1512 applies to investigations within agencies or bodies that have adjudicatory power.  *United States v. Kelley*, 36 F.3d 1118, 1127 (D.C. Cir. 1994) (a formal investigation opened by the Office of the Inspector General of AID was a "proceeding").   As noted in *Kelley*, the Court distinguished between "mere police investigation[s]," which are not "proceedings," and "investigations typically [involving] agencies with some adjudicative power, or with the power to enhance their investigations through the issuance of subpoenas or warrants."  *Id*.  *See also*, *United States v. Perez*, 575 F.3d 164, 169 (2nd Cir. 2009) ("[B]ecause [a BOP] review panel must 'determine' if there has been a violation of BOP policy, must make 'findings' and may 'decide' to refer the matter to senior departmental authorities, its work is sufficiently formal to satisfy the "official proceeding" element of § 1512(c)(1).").

Based upon these decisions, Congress' Electoral College certification on January 6th was not an "official proceeding" under § 1512.  Congress was not acting in a proceeding in which sworn testimony was taken, witnesses and documents were subpoenaed, or adjudicative power was exercised.  Therefore, on January 6th there was not an "official proceeding" as to which Congress intended §1512 to apply.

Because Count Three alleges that Blair "did corruptly obstruct, influence, and impede an *official proceeding*, that is, a proceeding before Congress," it fails to state an offense under § 1512.

IV.     **18 U.S.C. §1512(c)(2) is Void for Vagueness By Failing to Clarify What Conduct is Covered by Obstructing or Impeding an Official Proceeding.**

In this case, the prosecution has decided to charge a 20-year felony offense of obstructing an official proceeding against someone with who got into a scuffle with the police on the West Lawn of the Capitol after it had been cleared of protestors and while an "official proceeding" was not going at the time.  The apparent reach of the Act is boundless.  This is due in large part to the vagueness of the statute. Instead of relying solely on a misdemeanor charge of disorderly conduct under 40 U.S.C. §5104, it seeks to impose a conviction for a felony that exposes the Defendant to a 20-year sentence.

How is the ordinary citizen supposed to know whether his conduct runs afoul of §1512 (c)(2) and punishment for a felony or falls under the category of a misdemeanor offense of disorderly conduct under 40 U.S.C. §5104 which limits the punishment to six months in prison? The answer is far from easy.

In *Kolender v. Lawson*, 461 U.S. 352, 357-58 (1983), the Supreme Court addressed the void-for-vagueness doctrine.  The Court stated:

> As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and

discriminatory enforcement. Although the doctrine focuses both on actual notice to citizens and arbitrary enforcement, we have recognized recently that the more important aspect of vagueness doctrine is not actual notice, but the other principal element of the doctrine—the requirement that a legislature establish minimal guidelines to govern law enforcement.  Where the legislature fails to provide such minimal guidelines, a criminal statute may permit a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections. (*Citations and internal quotation marks omitted*.)

In enacting §1512(c)(2), Congress failed to provide minimal guidelines to clarify when a person's conduct qualifies as a felony or a misdemeanor.  Under the Act, a person who stands and blurts out speech during a committee hearing in Congress could be construed as impeding or interfering with an official proceeding and be exposed to a sentence of 20-years of imprisonment, not to mention being stuck with a career-ending conviction for a felony.  Subsection (c)(2) of §1512 provides no distinction between minimally disruptive conduct and more serious conduct of causing someone to induce false testimony or withhold testimony, alter a document or destroy evidence, evade legal process, etc.  In the absence of minimal guidelines in the Act to enable such distinctions to be made, the Act lacks sufficient definiteness that ordinary people cannot understand what conduct is prohibited, including whether their conduct is appropriately subject to conviction for a felony or a misdemeanor. It also enables a zealous prosecutor to bring felony charges against a certain segment of the population who have fallen out of favor and misdemeanor charges against another segment more in line with the political power in control of the government.

The Act's vagueness is also evident in respect to the type of proceeding which qualifies as an "official proceeding" under the Act.  Congress defined the term vaguely.  The Act states that an "official proceeding" means a number of things, one of them being "a proceeding before Congress." 18 U.S.C. §1515(a)(1)(B).  This fails to give any guidance as to the type of proceeding. This is not a small problem given that the text of the Act appears to focus on adjudicative

proceedings in which witnesses are called to give sworn testimony, documents are introduced, and adjudicatory power is exercised.

Based upon the foregoing, §1512(c)(2) is void for vagueness, and Count Three fails to state an offense and must be dismissed.

V.      **A Trial on the Merits on Count Three is Unnecessary Because Congress Had Suspended Counting Electoral Votes at the Time of the Alleged Offense.**

F.R.Crim.P. 12 (b)(1) permits a party to "raise by pretrial motion any defense, objection or request that the court may determine without a trial on the merits."   No trial on the merits is necessary, for the reason that the counting of electoral votes in Congress was suspended well before Blair allegedly obstructed an official proceeding, assuming that's what it was.   FBI Agent Fugitt stated in the Criminal Complaint that the offense occurred at 5:47 p.m.   The Complaint further states that by 2:20 p.m. members of both the House and the Senate had evacuated their chambers and the proceedings were suspended.   The Complaint further states that Congress did not resume in session until later that evening, shortly after 8:00 p.m.   Criminal Complaint, Statement of Facts, p. 1.   Since there is no possible way for Blair to have been able to obstruct the electoral vote count, Count Three fails to state an offense and must be dismissed.

VI.     **Count Seven Should Be Severed for Improper Joinder and to Prevent Undue Prejudice.**

Count Seven charges:

> On or about January 6, 2021, within the District of Columbia, **DAVID A. BLAIR**, did carry and have readily accessible, a dangerous weapon, that is, a knife having a blade longer than three inches in length, on the United States Capitol Grounds and in any of the Capitol Buildings.
>
> (**Unlawful Possession of a Dangerous Weapon on Capitol Grounds or Buildings**, in violation of Title 40, United States Code, Section 5104(e)(1)(A)(i))

F.R.Crim.P. 8(a) permits an indictment may charge two or more offenses if they "are the of the same or similar character, or are based on the same act or transaction, or are connected

with or constitute parts of a common scheme or plan."  Count Seven is improperly joined under this Rule.  It is not alleged in the indictment that Blair's possession of a knife was used to assault or impede a law enforcement officer or played any role in the commission of any other of the charges alleged in the indictment.  The prosecution does not need to prove that Blair possessed a knife in order to establish guilt under any other count in the indictment.  The offense charged in Count Seven is not the same or similar as any other offenses charged in the indictment.  The act of possessing a knife in Blair's backpack is not the same as the illegal acts which are alleged in the remaining counts and do not constitute a common scheme or plan.

In addition, Count Seven should be severed to prevent prejudice to Blair at trial.  In *Drew v. United States,* 331 F.2d 85 (1964), the Court  described the principal reasons why a defendant may be prejudiced by joint trial of offenses, even if proper under Rule 8:

> (1) he may become embarrassed or confounded in presenting separate defenses; (2) the jury may use the evidence of one of the crimes charged to infer a criminal disposition on the part of the defendant from which is found his guilt of the other crime or crimes charged; or (3) the jury may cumulate the evidence of the various crimes charged and find guilt when, if considered separately, it would not so find. A less tangible, but perhaps equally persuasive, element of prejudice may reside in a latent feeling of hostility engendered by the charging of several crimes as distinct from only one.

Applying these principles, Count Seven must be severed.  F.R.Crim.P. 14(a).  The fact that Blair had a knife in his backpack may lead the jury to infer a criminal disposition to commit the other offenses in the indictment and sway the jury to find Blair guilty when it would not do so if evidence of the knife was not presented.

Based upon the foregoing, the Court should grant the motion to dismiss Counts One through Three and sever Count Seven for trial on the remaining charges.

Respectfully submitted,
**ROBERTS & WOOD**

  _/s/ Terrell N. Roberts, III_
Terrell N. Roberts, III
DC Bar No. 965061
*Attorney for Defendant*
6801 Kenilworth Avenue, Suite 202
Riverdale, Maryland 20737
(301) 699-0764
(301) 699-8706 Fax
troberts@robertsandwood.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the foregoing Defendant's Motion to Dismiss was

electronically filed via CM/ECF system on November 10, 2021, and an electronic copy was e-

served to:

Michael Liebman, Esq.
Assistant United States Attorney
Office of the United States Attorney, District of Columbia
555 4th Street, NW
Washington, D.C. 20530

  _/s/ Terrell N. Roberts, III_
Terrell N. Roberts, III