**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No.: 1:21-cr-00186-CRC |
| | : | |
| DAVID ALLEN BLAIR | : | |
| | : | |
| Defendant. | : | |

**DEFENDANT DAVID ALAN BLAIR'S AMENDED REPLY TO THE
GOVERNMENT'S OPPOSITION TO DEFENDANT'S
AMENDED MOTION TO DISMISS THE INDICTMENT**

David Allen Blair, Defendant, by and through his counsel, Terrell N. Roberts, III, amends

his earlier-filed reply to the Government's Opposition to the Defendant's Amended Motion to

Dismiss the Indictment (Doc.#36) and states:

1. **Count One of The Superseding Indictment is Insufficient in Law Because It Fails to
   Allege that the Lacrosse Stick was Capable of Causing Bodily Injury or Death and
   That It Was Used in That Manner.**

Count One of the Superseding Indictment says no more than that that the Defendant, "using

a deadly or dangerous weapon, that is, a flag pole, did forcibly assault, resist, oppose, impede,

intimidate, and interfere with an officer and employee of the United States … while such officer

was engaged in the performance of official duties."

The alleged "flag pole" in this case was a lacrosse stick.  As such, it is not inherently deadly.

In *United States v. Arrington*, 309 F.2d 40, 45 (D.C. Cir. 2002), the Court stated:  "For an object

not inherently deadly the government concedes that the following additional element is required:

(4) the object must be capable of causing serious bodily injury or death to another person *and* the

defendant must use it in that manner." (*Emphasis in the original*.)

In *Pettibone v. United States*, 148 U.S. 197, 202 (1893), the Court stated that "[t]he general

rule in reference to an indictment is that all material facts and circumstances embraced in the

1

definition of the offense must be stated, and that, if any essential element of the crime is omitted, such omission cannot be supplied by intendment or implication." The Court went on further to note, *id.*, (*quoting United States v. Carli*, 105 U.S. 611, 612):

> "In an indictment upon a statute, it is not sufficient to set forth the offense in the words of the statute, unless those words, of themselves, fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished; and the fact that the statute in question, read in the light of the common law, and of other statutes on the like matter, enables the court to infer the intent of the legislature, does not dispense with the necessity of alleging in the indictment all the facts necessary to bring the case within that intent."

Under these principles, Count One fails to allege the requisite elements of the offense as to the alleged use of a deadly weapon to commit the offense. Count one does not address whether the lacrosse stick was capable of causing serious bodily injury or death and that the Defendant used it in that manner. Thus, Count One is legally insufficient to state an offense under 18 U.S.C. §111(b).

In the Defendant's motion to dismiss Count One of the Indictment, he argued that the evidence showed that the lacrosse stick was not deadly and that it was not used in a deadly manner. The Government's response asserted that the footage from the cameras worn by the police officers involved in the encounter is "distorted, shaky and difficult to follow," and that a trial is necessary to decide that issue. Govt.Opp., 5. We do not agree. Although the body-worn camera footage is not ideal, there is other footage which clearly shows the Defendant's use of the stick was nondeadly.[1] The footage shows that the Defendant held the lacrosse stick parallel to the ground and thrust it at the officer's upper torso, making light contact with the officer if at all. This is a movement known in lacrosse as a "check", or "cross-check." To use a lacrosse stick in this manner is not going to cause serious bodily injury or death to another person. One can clearly see from

---

[1] There are two videos taken from YouTube videos: https://www.youtube.com/watch?v=C74sc7dVMTk and https://www.youtube.com/watch?v=K0zRqFUQsDU. In the second video, the action involving the Defendant starts at 6:36. Downloaded copies of these videos are provided separately to the clerk. See Exhibit 1 on CD.

the footage exactly how the Defendant used the stick and that he did not use it in a manner that was deadly or capable of causing serious bodily injury. The footage is not ambiguous or capable of being construed otherwise.

Based upon the foregoing, Count One should be dismissed.

2. **Count Two Fails to Allege that a Civil Disorder Occurred As To Which the Officer's Performance of Duties Were Obstructed, Hindered or Delayed.**

The Defendant asserted in his Amended Motion to Dismiss that Count Two of the Indictment failed to state an offense because the indictment failed to allege the essential facts necessary to state an offense, namely, that the Defendant obstructed, impeded, or interfered with an officer engaged in the lawful performance of his duties "incident to and during the commission of a civil disorder." Amended Motion to Dismiss, p. 5. [Doc.# 26.] The Defendant's amended motion pointed to the fact that the alleged offense occurred at 5:47 p.m., on January 6, 2021; that the location of the offense was on the West Lawn of the Capitol, and not inside the Capitol building itself, and that by that time, a civil-disorder was not taking place inside the Capitol or on the West Lawn where the Defendant was. Given these facts, which are not addressed in the indictment, the indictment lacked the requisite essential facts to state an offense under 18 U.S.C. §231(a)(3). This is plainly supported by the available YouTube footage from the point that MPD officers start a march westbound across the West Lawn to Peace Circle where the march stops. (Footage attached previously). The footage shows the officers moving the crowd and one cannot see any acts of violence by assemblages of three or more persons which causes an immediate danger of damage or injury of any individual.

The Government argues that the defendant's "highly fact-oriented claim" is not a proper subject for a rule 12(b)(3)(B)(v) motion. It further asserts that it intends to prove at trial "there were still a crowd of rioters in the immediate vicinity of the defendant when he attacked Officer

K.P. and that that attack occurred as that officer, and others assisting him, were ordering the crowd to move back and off the Capitol grounds."  Again, the Defendant is at pains to point out that the indictment is legally insufficient to state all the facts necessary to bring the case within the intent of the statute.  *Pettibone v. United States*, *supra*, 545-546. In sum, there are insufficient factual allegations that the officer was lawfully engaged in the lawful performance of his official duties "incident to and during the commission of a civil disorder."

Count Two of the Superseding Indictment alleges that the civil disorder affected the movement of an article and commodity in interstate commerce.  Given what was going on at that time on the West Lawn at 5:47 p.m., the Government will be hard put to prove any such effect on Interstate Commerce.

   3.  **Count Three of the Indictment Fails to State an Offense under 18 U.S.C. § 1512 (c)(2)Because there are no Facts Alleged to Show a Nexus between the Defendant's Actions and an Actual Obstruction or Interference with an Official Proceeding, i.e., the Counting and Certifying the Presidential Election in Congress.**

The Defendant's Amended Motion to Dismiss asserted that under the unique facts of this case, Count Three failed to state an offense under 18 U.S.C. §1512 (c)(2).  The motion asserted that it was not factually possible for the Defendant to "obstruct, influence or impede an official proceeding" before Congress, specifically, Congress' certification of the Electoral college vote," because such proceedings before Congress were suspended at 2:20 p.m., and did not resume until after 8:00 p.m. on January 6, 2021.  Given that the alleged commission of the offense was 5:47 p.m., the Defendant argued that Count Three failed to state an offense because there was no possible way for the Defendant to obstruct, influence, or impede an official proceeding.

In dealing with 18 U.S.C. §1503, a related statute to §1512, the Supreme Court in *United States v. Aquilar*, 515 U.S. 593, 599 (1995) made the following observation of the requisite

knowledge a defendant must possess in order to be guilty of obstructing or impeding the due administration of justice in a court.  The Court stated:

> The first case from this Court construing the predecessor statute to §1503 was *Pettibone v. United States*, 148 U.S. 197, 13 S.Ct. 542, 37 L.Ed. 419 (1893). There we held that "a person is not sufficiently charged with obstructing or impeding the due administration of justice in a court unless it appears that he knew or had notice that justice was being administered in such court." Id., at 206. 13 S.Ct. at 546. The Court reasoned lacking knowledge of a pending proceeding necessarily lacked the evil intent to obstruct. *Id*., at 207, 13 S.Ct., at 546-547.  Recent decisions of the Court of Appeals have likewise tended to place metes and bounds on the very broad language of the catchall provision.  The action taken by the accused must be with an intent to influence judicial or grand jury proceedings; its not enough that there be an intent to some ancillary proceeding, such as an investigation independent of the court's or grand jury's authority. *United States v. Brown*, 688 F.2d 596, 598 (CA9 1982)(citing cases). Some courts have phrased this showing as a "nexus" requirement – that the act must have a relationship in time, causation, or logic with the judicial proceedings. *United States v. Wood*, 6 F.3d 692, 696 (CA10 1993); *United States v. Walasek*, 527 F.2d 676, 679 and n.12 (CA3 1975). In other words, the endeavor must have the "natural and probable effect" of interfering with the due administration of justice. *Wood*, *supra*, at 695; *United States v. Thomas*, 916 F.2d 647, 651 (CA11 1990); *Walasek*, *supra*, at 679. This is not to say that the defendant's actions need be successful; an endeavor suffices. *United States v. Russell*, 255 U.S. 138, 143, 41 S.Ct. 260, 261, 65 L.Ed. 553 (1921). But as in *Pettibone*, if the defendant lacks knowledge that his actions are likely to affect the judicial proceeding, he lacks the requisite intent to obstruct.

Here it is obvious that in the context of the Defendant's case, he lacked the requisite knowledge that his actions were likely to affect the congressional proceedings on January 6th.  The proceedings to certify the Electoral college vote were suspended at 2:20 p.m., and not resumed until 8:00 p.m.  The alleged obstruction or hindrance of the official proceeding occurred at 5:47 p.m. of that day.  The Defendant was not proximate to any congressional proceeding when he was arrested.   Nothing that he did had the natural and probable effect of interfering with a Congressional proceeding.  Count Three quite simply does not state an offense under 18 U.S.C. 1512 (c)(2) as applied to the facts of this case.

4. **Counts Four, Five, and Six Fail to State Offenses under 18 U.S.C. §1752 Inasmuch as there are No Facts Alleged that the Vice President was in the US Capitol building or and on its Grounds at 5:47 p.m. on January 6th.  Furthermore, There were no Markings or Signage Indicating that the West Lawn was Restricted to the Public.**

Counts Four, Five, and Six of the Superseding Indictment allege:

## COUNT FOUR

On or about January 6, 2021, within the District of Columbia, **DAVID A. BLAIR**, did unlawfully and knowingly enter and remain in a restricted building and grounds, that is, any posted, cordoned-off, and otherwise restricted area within the United States Capitol and its grounds, where the Vice President was temporarily visiting, without lawful authority to do so, and, during and in relation to the offense, did use and carry a deadly and dangerous weapon, that is, a flagpole.

(**Entering and Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon**, in violation of Title 18, United States Code, Section 1752(a)(l) and (b)(1)(A))

## COUNT FIVE

On or about January 6, 2021, within the District of Columbia, **DAVID A. BLAIR**, did knowingly, and with intent to impede and disrupt the orderly conduct of Government business and official functions, engage in disorderly and disruptive conduct in and within such proximity to, a restricted building and grounds, that is, any posted, cordoned-off, and otherwise restricted area within the United States Capitol and its grounds, where the Vice President was temporarily visiting, when and so that such conduct did in fact impede and disrupt the orderly conduct of Government business and official functions, and, during and in relation to the offense, did use and carry a deadly and dangerous weapon, that is, a flagpole.

(**Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon**, in violation of Title 18, United States Code, Section 1752(a)(2) and (b)(1)(A))

## COUNT SIX

On or about January 6. 2021, within the District of Columbia, **DAVID A. BLAIR**, did knowingly, engage in any act of physical violence against any person and property in a restricted building and grounds, that is, any posted, cordoned-off, and otherwise restricted area within the United States Capitol and its grounds, where the Vice President was temporarily visiting, and, during and in relation to the offense, did use and carry a deadly and dangerous weapon, that is, a flagpole.

(**Engaging in Physical Violence in a Restricted Building or Grounds with a Deadly or Dangerous Weapon**, in violation of Title 18, United States Code, Section 1752(a)(4) and (b)(l)(A))

The common thread which runs through Counts Four, Five, and Six is that the defendant

engaged in unlawful acts "in a restricted building and grounds, that is, any posted, cordoned-off,

and otherwise restricted area within the United States Capitol and its grounds, where the Vice

President was temporarily visiting, … ." FBI records furnished in discovery disclosed interviews

of PAUL WADE and LANELLE HAWA, agents of the United States Secret Service.  The

interviews reveal investigation dates of October 19, 2021, of Agent WADE, and October 26,

2021, of Agent HAWA.  The records demonstrate sufficiently that Vice President Michael Pence

was not in the Capitol or on Capitol grounds at 5:47 p.m. on January 6, 2021.  These witnesses

indicated to the FBI that Vice President Pence was evacuated by motorcade at 1430 hours from

the Capitol and grounds and that he did not return to the Capitol and grounds until 2000 hours on

January 6, 2021.

Based on such facts, the alleged cordoned-off or restricted area was not active at 5:47

p.m., because the Vice-President was not in the Capitol or its grounds at that time.  In sum, these

counts fail to state valid offenses under §1752.

Finally, -- and further discovery will show this—that by 5:47 p.m. on January 6th, signage

and areas on the West Lawn previously marked "restricted" or closed were torn down or

removed by the time the Defendant entered the West Lawn, which was shortly before 5:47 p.m.

See, Exhibit 2, Affidavit of Anne Moser attached to the Defendant's Reply to the Government's

Opposition to the Amended Motion to Dismiss [Doc.#36]  Defendant incorporates all exhibits

previously attached to his filing.  Thus, the defendant had no way of knowing the area of the

West Lawn was restricted ground.  Since the Government well knows that the area was not

marked or cordoned off as restricted at the time that the Defendant entered on the property, it is

duly bound to state as much in the indictment.  Based upon the foregoing, Counts Four, Five, and

Six fail to state offenses.

Respectfully submitted,
**ROBERTS & WOOD**

*/s/ Terrell N. Roberts, III*
Terrell N. Roberts, III
DC Bar No. 965061
*Attorney for Defendant*
6801 Kenilworth Avenue, Suite 202
Riverdale, Maryland 20737
(301) 699-0764
(301) 699-8706 Fax
troberts@robertsandwood.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Defendant's Amended Reply to the Government's Opposition to the Amended Motion to Dismiss was electronically filed via the CM/ECF system on December 29, 2021, and an electronic copy was e-served to:

Michael Liebman, Esq.
Assistant United States Attorney
Office of the United States Attorney, District of Columbia
555 4th Street, NW
Washington, D.C. 20530

*/s/ Terrell N. Roberts, III*
Terrell N. Roberts, III