## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **No. 1:21-cr-00186-CRC** |
| | : | **18 U.S.C. §231(a)(3)** |
| **DAVID ALAN BLAIR,** | : | |
| | : | |
| **Defendant.** | : | |

## STATEMENT OF OFFENSE

Pursuant to rule 11 of the Federal Rules of Criminal Procedure, the United States of America, by andthrough its attorney, the United States Attorney for the District of Columbia, and the defendant, David Alan Blair, with the concurrence of his attorney, agree and stipulate to the below factual basis for the defendant's guilty plea--that is, if this case were to proceed totrial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

### *The Attack at the U.S. Capitol on January 6, 2021*

1.    The U.S. Capitol, which is located at First Street, S.E., in Washington, D.C., is secured 24 hours a day by U.S. Capitol Police.  Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police.

2.    Only authorized people with appropriate identification are allowed access inside the U.S. Capitol.

3.    On January 6, 2021, the exterior plaza of the U.S. Capitol was closed to members of the public.

4.    On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the jointsession, elected members of the United States House of Representatives and the United

States Senate were meeting in separate chambers of the United States Capitol to certify the vote

count of the Electoral College of the 2020 Presidential Election, which had taken place on

December 14, 2020.  The joint session began at approximately 1:00 p.m.  Shortly thereafter, by

approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a

particular objection.  Vice President Mike Pence was present and presiding, first in the joint

session, and then in the Senate chamber.

5.      As the proceedings continued in both the House and the Senate, and with Vice

President Pence present and presiding over the Senate, a large crowd gathered outside the U.S.

Capitol.  As noted above, temporary and permanent barricades were in place around the exterior

of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the

crowd away from the Capitol building and the proceedings underway inside.

6.      At approximately 2:00 p.m., certain individuals in the crowd forced their way

through, up, and over the barricades, and officers of the U.S. Capitol Police, and the crowd

advanced to the exterior façade of the building.  The crowd was not lawfully authorized to enter

or remain in the building and, prior to entering the building, no members of the crowd submitted

to security screenings or weapons checks by U.S. Capitol Police Officers or other authorized

security officials.

7.      At such time, the certification proceedings were still under way and the exterior

doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S.

Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however,

shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by

breaking windows and by assaulting members of law enforcement, as others in the crowd

encouraged and assisted those acts. The riot resulted in substantial damage to the U.S. Capitol, requiring the expenditure of more than $1.4 million dollars for repairs.

8.　　Shortly thereafter, at approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Pence, were instructed to--and did--evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 p.m. the same day. In light of the dangerous circumstances caused by the unlawful entry tothe U.S. Capitol, including the danger posed by individuals who had entered the U.S. Capitol without any security screening or weapons check, congressional proceedings could not resume until after every unauthorized occupant had left the U.S. Capitol, and the building had been confirmed secured. The proceedings resumed at approximately 8:00 p.m. after the building had been secured. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

9.　　The attack at the Capitol on January 6, 2021 constituted a civil disturbance that affected interstate commerce by, among, other things drastically reducing, on that date, the sales of groceries and other goods, shipped in interstate commerce, at Safeway stores in Washington, D.C.

### *David Alan Blair's Participation in the January 6, 2021, Capitol Riot*

10.　　On January 6, 2021, during the above-referenced events, Officer K.P. of the Washington D.C., Metropolitan Police Department (MPD) was working his evening shift in his official capacity. During that shift Officer K.P. was directed to report to the U.S. Capitol building to assist the U.S. Capitol Police in their duties to maintain security of the U.S. Capitol building.

11.　　Between 5:00 pm and 6: 00 pm, Officer K.P., along with MPD Civil Disobedience Unit (CDU) 63, formed a line at the west terrace of the U.S. Capitol building and began moving

towards the west lawn to move individuals off Capitol grounds. The MPD officers ordered the crowd of individuals on the west lawn to "move back" away from the U.S. Capitol building.

12.    The MPD officers advanced on the crowd as a line and managed to create space between the officers and the crowd. At approximately 5:47 pm, while still on the west lawn, defendant David Alan Blair positioned himself between the officers and the crowd and began to walk in the space while waving a Confederate battle flag attached to what defendant Blair later admitted was a lacrosse stick.

13.    While walking back and forth in the space between officers and the crowd, defendant Blair yelled words to the effect of, "hell naw, quit backing up, don't be scared, we're Americans, don't be scared, let's go quit backing up, quit being scared." As officers advanced, Officer K.P. physically pushed defendant Blair back toward the crowd using his baton. Defendant Blair jumped back and turned to face Officer K.P., while squaring up his body to stand in front of Officer K.P. Defendant Blair held the lacrosse stick attached to the Confederate battle flag with two hands and started shouting, "What's up motherfucker, what's up, what's up bitch?".

14.    Defendant Blair thrust the stick at Officer K.P towards the chest area, striking him. Immediately thereafter, several officers were able to restrain defendant Blair on the ground using their batons. Defendant Blair was then removed from the west lawn and transported closer to the U.S. Capitol building where his arrest would be processed.  While in handcuffs and not in response to any questions prompted by any members of MPD, defendant Blair stated words to the effect of, "I understand, what I did, the one motherfucker swung at me so I kinda switched . . . so I apologize, we're done though."

15.    MPD officers transported defendant Blair to the U.S. Capitol building, where he was searched before he was turned over to United States Capitol Police (USCP) for processing. During the search incident to arrest, a black bag with "TEMPO" in yellow block lettering and light in color drawstrings was recovered from defendant Blair's back. Within the bag, MPD recovered a silver knife, which defendant Blair explained he had on him "cause I was worried about Antifa

and other people trying to jump me." Additional items were also recovered from the bag, including tape, which defendant Blair acknowledged "looks damn suspicious," and regarding which he explained, "I had a flag with me, I taped it."

16.     While in police custody, defendant Blair was transported to George Washington University Hospital for lacerations to his head, which he sustained after defendant Blair struck Officer K.P. Defendant Blair was then transported to the United States Capitol Police station, where his arrest was processed.

17.     Defendant Blair obstructed, impeded or interfered with law enforcement officers lawfully engaged in the law performance of their official duties incident to and during the commission of a civil disorder which adversely affected commerce and the performance a federally protected function.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney

by:     /s/ *Michael C. Liebman*

Michael C. Liebman
Assistant U.S. Attorney
555 4th St., N.W., room 9106
Washington, D.C.  20530
(202) 252-7243
(202) 353-9415 (fax)

5

## DEFENDANT'S ACKNOWLEDGMENT

I, David Alan Blair, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

date:

David Alan Blair, defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

date:

Terrell N. Roberts, III, Esq.
Attorney for defendant Blair